JAMES A. SIMON AND NEW AMSTERDAM CASUALTY COMPANY v. RALEIGH CITY BOARD OF EDUCATION, ACTING BY AND THROUGH BOARD OF TRUSTEES, RALEIGH CITY ADMINISTRATION UNIT, ORIGINAL DEFENDANT AND GUY E. CRAMPTON, JR., J. STANLEY FISHEL, C. FRANK BRANNAN, JR., LINDSEY B. HOPKINS, DAVID R. NOLAND, JAMES R. PITTMAN, JR., AND MARL E. RAY, CO-PARTNERS PRACTICING ARCHITECTURE UNDER THE NAME OF GUY E. CRAMPTON AND ASSOCIATES, ADDITIONAL DEFENDANTS.

(Filed 11 January 1963.)

1. **Parties § 7—  Owner may not by counterclaim interplead party whose claim to fund does not arise from common source.**

The construction contract in suit provided that upon breach by the contractor the contractor should pay the owner, as one of the items of damage, compensation for additional management and administrative services necessary to the completion of the contract. *Held:* The amount due architects necessarily employed by the owner to supervise the completion of the contract after breach by the contractor would be an item which the owner might assert as an offset against the amount due the contractor, but in no event would the contractor be liable directly to the architects, and therefore in the contractor's action to recover the balance alleged to be due on the contract price, the owner is not entitled to interplead the architects either under the general remedy of interpleader or under a bill in the nature of interpleader.

2. **Same—**

In order to be entitled to interplead, plaintiff must have no claim or interest in the fund or subject matter in question and two or more parties must assert a claim thereto derived from a common source without the incurrence of any independent liability to either by plaintiff, and G.S. 1-73(3) does not supersede the equitable remedy and is governed by the same doctrine and principles. A bill in the nature of interpleader may be maintained even though plaintiff has an interest in the subject matter of the controversy.

3. **Parties § 4—**

In an action by the contractor for the balance alleged to be due on the contract price, the owner alleged breach of contract and asserted he had incurred expenses for architectural supervision in completing the contract for which the contractor was liable. *Held:* Whether the owner was entitled to assert the architects' fee as an offset against the contract

price would have to be litigated in the action between the contractor and the owner, and the architects were proper, although not necessary, parties, and therefore no prejudice resulted to the contractor by the discretionary order of the court making the architects additional parties.

**4. Appeal and Error § 3—**

The court has discretionary authority to order the joinder of proper parties, and its order doing so is not appealable unless it adversely affects a substantial right which appellant might lose if the order is not reviewed before final judgment.

HIGGINS, J. concurs in result.

APPEAL by the plaintiffs from *Copeland, S.J.*, August 1962 Nonjury Term of WAKE.

This civil action was instituted by the plaintiff Simon, general contractor, and plaintiff Casualty Company, surety on his performance bond, to recover the sum of $32,036.81, balance alleged to be due on the contract entered into between defendant Board of Education and Simon on December 4, 1957 for the construction of a gymnasium and cafeteria at Needham Broughton High School in Raleigh.

The contract provided that Simon should furnish all labor and materials, and construct the building, within 400 days after notice to proceed, in accordance with enumerated contract documents prepared by Deitrick and Associates, architects. The contract price, subject to additions and deductions to be certified by the supervising architects, was $538,960.00. Partial payments based on the architects' estimate of the cost of labor and materials provided were to be made as the work progressed.

Plaintiffs allege that during the course of construction Simon encountered financial difficulties and received assistance from the Casualty Company which became partially subrogated to his rights under the construction contract; that Simon substantially completed the work in January, 1960 at which time defendant owed him a balance of $73,626.65; and that on December 13, 1959, defendant paid plaintiffs $41,589.84, leaving the balance for which plaintiffs sue.

Answering the complaint, the defendant denied that plaintiffs had substantially performed the contract. On the contrary, defendant alleged the following facts:

Plaintiffs furnished faulty material and workmanship; delayed the completion of the building beyond the time prescribed in the contract, persistently disregarding the instructions of the supervising architects; and failed to pay his subcontractors and materialmen. On August 25, 1959, pursuant to the contract, defendant notified Simon and Casualty Company that the contract was terminated because of Simon's failure

to comply with it. Thereafter, Casualty Company undertook to finish the building under the terms of its bond, but Casualty Company also failed to comply with the building contract. On November 13, 1959, after notice to the plaintiffs, defendant occupied the building and employed another contractor to finish the work. On that date the supervising architects, Guy E. Crampton and Associates, inspected the building and certified to the defendant that under the terms of the original contract there had been a delay of 192 days in completing the gymnasium for which defendant was entitled to a deduction of fifty dollars a day; that after taking into account all additions and deductions, and after withholding the further sum of $10,000.00 to correct "leaks in walls, roof and windows," the contractor was entitled to the sum of $41,589.84. Accordingly, the defendant paid this amount to the plaintiffs. Thereafter the leaks were corrected by defendant at a cost of only $5,611.58, leaving a balance in defendant's possession of $4,388.42.

By further answer, the defendant alleged that it holds this sum for plaintiffs subject to a claim of $5,641.70 in favor of the supervising architects; that to protect the defendant in the event it had to terminate the contract because of plaintiffs' substantial violation of its terms, article 22 of the contract contained the following provision:

> "(T)he Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price shall exceed the expense of finishing the work including compensation for additional managemental and administrative services, such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. The expense incurred by the Owner as herein provided, and the damage incurred through the Contractor's default, shall be certified by the Architect."

The defendant further averred that the architects, without collusion with defendant, have made demand upon it for the payment to them of the entire balance due plaintiffs; that the claims of the plaintiffs and the architects is derived from a common source and that as to the amount of $4,388.42, the defendant is a mere stakeholder; and that the architects are necessary parties for a complete determination of the controversy involved in this action. Upon these allegations the defendant moved the court that the copartnership of Crampton and Associates be made parties to this action and be required to interplead their claim against the funds retained by the defendant; that the defendant be allowed to pay the sum of $4,388.42 into court and be discharged from any further liability with reference to the contract.

The clerk of the Superior Court held that the architects were necessary and proper parties to the action without whom a complete determination of the controversy could not be had and the rights of the defendant protected. He ordered them to interplead within thirty days and directed the defendant to pay into court the said sum of $4,388.42 to be held pending a final determination of the claims of the plaintiffs and the additional defendants to the said fund. His order further provided that upon the payment of the said $4,388.42 into court, "the defendant Raleigh City Board of Education shall be discharged from liability to the plaintiffs and to the additional defendants with respect to the said $4,388.42." From the clerk's order plaintiffs appealed to the judge of the Superior Court. Upon the hearing before him the architects also moved that they be made additional defendants to the action in order to assert their claim. The judge confirmed the order of the clerk in all respects. From his order making the architects additional parties defendants, the plaintiffs appealed to this Court.

*Dupree, Weaver, Horton & Cockman for plaintiff appellants.*
*Lassiter, Leager & Walker for defendant appellee.*

SHARP, J. The plaintiffs' only assignment of error raises the one question, did the court err in making the architects additional parties to this action?

Plaintiffs have sued for $32,036.81, the balance they allege to be due under the construction contract. The defendant alleges that because of the plaintiffs' breach of the contract the balance due plaintiffs is only the sum of $4,388.42 which is subject to a claim by the architects. In making this contention the defendant has misconstrued the nature of the architects' claim. The architects have no contract with plaintiffs. Defendant says they base their claim to the fund on article 22 of the contract between plaintiffs and defendant which provides that in the event of contractor's breach of the contract he should pay *to the owner compensation for additional managemental and administrative services.* Conceding a breach of the contract by plaintiffs which required additional work by the supervising architects, this language is broad enough to require plaintiffs to reimburse defendant for reasonable and necessary compensation to the architects for such services. However, it was included for the protection of the defendant and not the architects. They are not, therefore, third party beneficiaries. The architects' claim is not against the funds which the defendant owes to the plaintiffs but against the defendant Board of Education. However, if the architects have a valid claim against the defendant for additional work made necessary by a breach of contract by plaintiff, the amount

of their claim would be an item of damages which defendant would be entitled to deduct from the balance it owes plaintiffs. In both the claim of the plaintiffs and the claim of the architects against defendant these questions arise with reference to the architects' bill: (1) Did plaintiffs breach the construction contract? (2) If so, did the breach require defendant to obtain additional managemental and supervisory services from the architects? and (3) If required, what were the additional services reasonably worth?

Thus, we have here a situation where A sues B for a balance alleged to be due by contract. B alleges that because of A's breach of the contract he had to employ C to do extra work and that A's claim should be reduced by the amount of C's claim against B.

If the architects are not made parties and, upon trial of the issue of indebtedness between the plaintiffs and defendant, the jury should find the defendant owed plaintiffs nothing, presumably the architects would be entitled to recover from the defendant only the sum which it has paid into court. Having failed to include their claim in the certificate under which defendant, according to its answer, paid plaintiffs all but the amount estimated to be necessary to correct leaks in the walls and roof, the architects would be estopped to claim from the defendants any more than the difference between the amount of $10,000.00 retained and the sum of $5,611.58 which was actually required to correct the leaks, to wit, $4,388.42. However, if the jury should find that the defendant was not entitled to offset the architects' claim, against plaintiffs' claim, notwithstanding other possible defenses the defendant might have, the architects would not be estopped *by the judgment* in this case to pursue their claim against the defendant for their services to it. While the architects have expressed their desire to be made parties they have as yet filed no pleadings, and we cannot now anticipate their case against the defendant or its possible defenses to it. In any event, whether the architects are parties, or not, the validity and amount of their claim will be one of the issues in this case, and presumably they will be material witnesses.

Defendant earnestly contends that it is entitled to make the architects parties to the action under the general equitable remedy or interpleader as well as under the third section of G.S. 1-73 which, in practical effect, is a codification of the remedy of interpleader. The statute does not supersede the equitable remedy and is governed by the same doctrine and principles. 48 C.J.S., Interpleader, Section 4.

"Interpleader is an equitable remedy in which a person, who owes or is in possession of money or property in which he disclaims any title or interest but which is claimed by two or more persons, prays that the claimants be compelled to state their several claims, so that the

court may adjudge to whom the matter or thing in controversy belongs. The office or function of the remedy is to protect one against conflicting claims and double vexation with respect to one liability." 48 C.J.S., Interpleader, Section 2.

The equitable remedy of interpleader requires the existence of four essential conditions. "1. The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded. 2. All their adverse titles or claims must be dependant, or be derived from a common source. 3. The person asking the relief — the plaintiff — must not have nor claim any interest in the subject-matter. 4. He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position merely of a stakeholder." *Knights of Honor v. Selby,* 153 N.C. 203, 69 S.E. 51; Pomeroy's Equity Jurisprudence (5th Ed.) Sec. 1322. Anno: Interpleader in Equity — General Principles, 35 Am. Dec. 695.

The third provision of G.S. 1-73 provides: "A defendant against whom an action is pending upon a contract or for specific real or personal property, upon proof by affidavit that a person not a party to the action makes a demand against him for the same debt or property without collusion with him, may at any time before answer apply to the court, upon notice to that person and the adverse party, for an order to substitute that person in his place, and to discharge him from liability to either, on his paying into court the amount of the debt, or delivering the possession of the property or its value to such person as the court directs. The court may make such an order."

It is obvious that the defendant is not entitled to interplead the architects either under this statute or the equitable remedy of interpleader. The defendant may not be discharged from liability, and the architects substituted in its place, upon the payment into court of the amount which defendant alleges it owes plaintiffs. Plaintiffs claim a sum approximately eight times greater than that amount. The amount defendant owes plaintiffs is a disputed question of fact which a jury must decide. The defendant therefore has an interest in the subject matter. It is not an independent stakeholder who can be dismissed from the suit. Since dismissal is one of the essentials of interpleader, the remedy must be denied an interested party.

Furthermore, the plaintiffs and the architects (the would-be claimants whom defendant [plaintiff in interpleader] would interplead) do not claim the same debt or fund. While the difference in the amount of the claims would not be fatal, *Pomeroy, supra,* Section 1322; School District No. 1 of *Grand Haven v. Weston* (1885), 31 Mich. 85, under the facts stated in defendant's answer — which are accepted for the purposes of this appeal though they may appear quite different on the

trial of the action — there is no common fund to which the plaintiffs and the architects may lay claim. The architects were not a party to the contract under which plaintiffs claim the right to recover from the defendants nor were plaintiffs in any way connected with or bound by the contract between the architects and defendant. These two contracts were wholly independent transactions in respect to which there appears no privity of interest between the architects and the plaintiffs even though the contractual duty of the architects was to supervise the plaintiffs' construction for defendant. If the plaintiffs performed their contract as alleged they would be entitled to recover from defendant without reference to the right of the architects under their contract, and if the architects performed their particular contract with defendant the same would be true as to them, nothing else appearing. It is conceivable that defendant might be liable to both plaintiffs and the architects. *Alton & Peters v. Merritt et al,* 145 Minn. 426, 177 N.W. 770, was a case in which two real estate agents by virtue of separate contracts claimed a commission from the defendant for having produced a purchaser ready, willing, and able to buy defendant's lands on the terms he specified in each contract. When one sued him for the commission the defendant attempted to interplead the other. The court denied the right upon the grounds above set out.

Defendant contends further, however, that if it is not entitled to the remedy of interpleader proper because of its interest in the subject matter of the suit, it is entitled to a bill in the nature of an interpleader. This latter is a device resorted to in order to avoid the strict requirements of Pomeroy's four requisites for interpleader proper. Beckman, Jr., Interpleader, 16 U. of Cinn. L. Rev. 117; Chafee, Modernizing Interpleader, 30 Yale L.J. 814.

"On a bill of interpleader, a complainant simply prays that the hostile claimants be required to cease from troubling him and to settle their dispute among themselves, while on a bill in the nature of an interpleader, a complainant may ascertain and establish his own rights and may have affirmative relief. . . 'A bill in the nature of an interpleader is one in which a complainant asks some relief over and above a mere injunction against suits by the contesting parties, and states facts which entitle him to such relief independent of the fact of the adverse claims of the several defendants.' " *Urban v. Olson,* 127 N.J. Eq. 311, 13 A. 2d 221.

The statements of the characteristics of a bill in the nature of an interpleader are frequently general and indefinite, but the material difference between a strict interpleader and a bill in the nature of an interpleader seems to be that in the latter the plaintiff may show that he has an interest in the subject matter of the controversy be-

SIMON v. BOARD OF EDUCATION.

tween the claimants. The claimants must still claim the same property, fund or a portion of it, from the plaintiff, and they must derive their claims to it from a common source unless this requirement has been abolished by statute. *Stephenson and Coon v. Burdett,* 56 W. Va. 109, 48 S.E. 846; *Ross Const. Co. v. Chiles,* 344 Mo. 1084, 130 S.W. 2d 524.

While statutes in some jurisdictions have eliminated the requirement, many opinions say that a bill in the nature of interpleader lies only when the applicant can show that in addition to multiple vexation from several suits he has some other grounds for going into equity such as the administration of a trust or enforcement of a lien or the cancellation of an instrument. 16 U. of Cinn. L. Rev. 117, 163, *supra;* 48 C.J.S., Interpleader, Section 7; Anno. Interpleader by Interested Persons, 83 L. Ed. 840, 849. *Aleck v. Jackson,* 49 N.J. Eq. 507, 23 A. 760.

Chafee, in his article cited *supra,* 839, points out that many courts get around Pomeroy's four requirements by showing great readiness to find an independent ground of equitable jurisdiction on which to base a bill in the nature of interpleader; that often this ground is not stated but it is hard to find any except multiplicity, which is not far removed from double vexation and nothing more; and that a skillful pleader can usually work out some ground. In this case defendant has stated no other ground for equitable relief but, in any event, the fact that the claims of plaintiffs and the architects do not arise out of a common source or obligation precludes the remedy of a bill in the nature of an interpleader.

In holding that the architects are necessary and proper parties without whom a complete determination of the controversy could not be had nor the rights of the defendant properly protected, the court employed some of the wording of Section 1 of G.S. 1-73. However, it acted under Section 3 of the statute when it purported to release defendant from the claim of both the plaintiffs and the architects *to the extent of the $4,388.42* it deposited with the court. Although no particular prejudice is apparent from it, this order was improvidently entered. Under the circumstances of this case, the judge had no authority to discharge the defendant from liability for a portion of the disputed claim upon the payment of an equivalent amount into court nor to transfer the claim of the architects and a portion of plaintiffs' claim to that particular fund. Actually, the defendant has not admitted that it owes plaintiffs any sum whatsoever. The defendant's plea is that it owes plaintiffs nothing because plaintiffs' breach of contract made additional architectural services necessary. There is a difference between Section 1 of G.S. 1-73 and attorney. It says that the court must cause necessary parties to be brought in. *Overton v. Tarkington,* 249

N.C. 340, 106 S.E. 2d 717. It contemplates only the making of necessary parties. *Moore v. Massengill*, 227 N.C. 244, 41 S.E. 2d 655, 170 A.L.R. 147. However, in the other two sections which provide for interpleader, the legislature has said that the court *may* order additional parties to be brought in. *Kornegay v. Steamboat Co.*, 107 N.C. 115, 12 S.E. 123. Thus, the granting or refusal of a petition for interpleader is within the sound discretion of the court. *Barnett v. Woodland*, Tex. Civ. App., 310 S.W. 2d 644; *Maxwell v. Philadelphia Fire Department Relief Ass'n.*, 138 *Pa. Superior Ct.* 356, 10 A 2d 857. The trial judge was therefore acting in his discretion when he purported to order the architects to interplead in this action.

For the reasons heretofore stated, the defendant is not technically entitled either to a bill of interpleader or to a bill in the nature of an interpleader. Furthermore, the architects are not necessary parties because the amount, if any, which the defendant owes plaintiffs can be completely and finally adjudicated without the presence of the architects in this suit and without directly affecting their rights. *Garrett v. Rose*, 236 N.C. 299, 72 S.E. 2d 843; *Childers v. Powell*, 243 N.C. 711, 92 S.E. 2d 65; *Kelly v. Kelly*, 241 N.C. 146, 84 S.E. 2d 809. However, the architects are most certainly proper parties. "Proper parties are those whose interests may be affected by a decree, but the court can proceed to adjudicate the rights of others without necessarily affecting them, and whether they shall be brought in or not is within the discretion of the court." McIntosh, 2d Ed. Section 584; *Gaither Corporation v. Skinner*, 238 N.C. 254, 77 S.E. 2d 659. The making of proper parties is always in the discretion of the court. *Childers v. Powell, supra.* As pointed out by *Rodman, J.*, in *Overton v. Tarkington, supra*, "When not regulated by statute the procedural processes which will best promote the administration of justice are left to the judicial discretion of the trial judge. He has plenary power with respect to those who ought to be made parties to facilitate the administration of justice."

From the pleadings now before us it appears that the architects' claim against defendant is based solely on extra supervisory work which they claim was necessitated by plaintiffs' breach of contract. Their claim is one of the items of damages by which defendant seeks to reduce plaintiffs' claim against it. We perceive no sound reason why this controversy should not be determined once and for all in one law suit. It is inconceivable that any prejudice could come to the plaintiffs from the presence of the architects in the suit since, whether they are parties or not, the validity and amount of their claim will be one of the issues in the case. Both convenience and the ends of justice will be promoted by making the architects parties so that both claims can be settled in one suit. This is just what the judge did.

Whether he admitted them as interpleaders or proper parties, he made them parties in the exercise of his discretion. Under the circumstances of this case, the order will not be disturbed under the well recognized rule that ordinarily no appeal lies from an order making additional parties unless such order adversely affects a substantial right which appellant might lose if the order is not reviewed before final judgment. *Raleigh v. Edwards,* 234 N.C. 528, 67 S.E. 2d 669; *Snipes v. Estates Administration, Inc.* 223 N.C. 777, 28 S.E. 2d 495, *Childers v. Powell, supra.* Appellants have shown no prejudice which would warrant an appeal.

HIGGINS, J. concurs in result.