JENNINGS GLASS COMPANY, INC. v. HARRY BRUMMER

HARRY BRUMMER v. JENNINGS GLASS COMPANY, INC.

No. 8728SC300

(Filed 15 December 1987)

### 1. Trial § 3.2— deposition of witnesses—illness—denial of continuance

The trial court did not abuse its discretion in the denial of defendant's motion for a continuance on the ground that plaintiff's deposition of three defense witnesses would delay defendant's trial preparation. Nor did the court abuse its discretion in the denial of defendant's motion for continuance on the ground of serious illness where defendant failed to make a formal motion for continuance on this ground and the trial court noted that defendant had appeared before the court only a week earlier.

### 2. Trial § 8— consolidation of claims—defendant absent from motion hearing

Defendant cannot complain of the trial court's allowance of his motion to consolidate his claim against plaintiff with plaintiff's claim against him when defendant was absent from the motion hearing.

### 3. Quasi Contracts and Restitution § 2— extra work not contemplated by contract —quantum meruit recovery

Plaintiff was entitled to the value of his written contract plus the value of additional services provided to defendant where plaintiff and defendant had agreed, by subsequent oral and written modifications, upon additional work for an increased cost, and plaintiff in fact did additional work not contemplated by the original agreement.

### 4. Damages § 11.1— punitive damages for fraud

Punitive damages were properly awarded in an action to recover for the supply and installation of glasswork where the evidence and findings supported the trial court's conclusion that defendant defrauded plaintiff.

### 5. Laborers' and Materialmen's Liens § 8.1— judgment enforcing materialman's lien—effective date and limit of lien

A judgment enforcing a materialman's lien must be amended to reflect the effective date of the lien and to limit the amount of the lien to the amount stated in the claim of lien.

### 6. Unfair Competition § 1— unfair trade practice—failure to pay for services and materials

Plaintiff was entitled to treble damages and attorney fees for an unfair trade practice where the trial court found that defendant routinely engaged in a pattern of deceitful and misleading practices whereby he secured the services and materials of various businesses and contractors, including plaintiff, without payment of just compensation and without the intent to pay just compensation.

APPEALS by defendant Brummer and plaintiff Jennings Glass Company, Inc. from *Gudger, Lamar, Judge*. Judgment entered 22 October 1986 in the BUNCOMBE County Superior Court. Heard in the Court of Appeals 19 October 1987.

For convenience, we shall refer to defendant Brummer as defendant and plaintiff Jennings Glass Company, Inc. as plaintiff. Plaintiff's claim of lien and separate complaint alleging breach of contract against defendant, both filed 14 November 1985, gave rise to the present action. Plaintiff filed an amended complaint on 6 January 1986 seeking, *inter alia*, recovery of amounts owed under the contract, sale of defendant's property pursuant to N.C. Gen. Stat. § 44A *et seq.*, punitive damages, treble damages and attorney's fees under N.C. Gen. Stat. § 75-1.1.

By order dated 19 August 1986 the trial court continued the case until 20 October 1986. The order also required all parties to file by 28 August 1986, a list of all their witnesses to be called at trial.

Defendant, appearing *pro se*, filed a separate action against plaintiff on 3 September 1986 seeking recovery of monies previously paid by defendant. Defendant moved to consolidate his own action with Jennings' which motion was granted 9 October 1986 over plaintiff's objection. Defendant's action was later dismissed by the 22 October 1986 judgment.

Defendant moved to continue the trial on 2 October 1986, asserting as grounds that plaintiff's 10 October 1986 deposition of three of defendant's witnesses would delay defendant's trial preparation and prejudice defendant. The trial court denied the motion on 8 October 1986. On the same day, plaintiff filed supplemental answers previously required by the 19 August 1986 order which listed nine additional witnesses for plaintiff.

When the case came on for trial on 20 October 1986 defendant failed to appear. A woman purporting to be his secretary delivered a letter to the court from a physician in Florida stating that defendant was too ill to attend court. The letter was accompanied by a telegram from defendant's wife containing a similar message. Remarking that defendant had appeared before the trial court within a week of trial, the court refused to continue the case but gave defendant 24 hours in which to appear. The next

day the court received a notarized letter from defendant's Florida physician but defendant did not appear. Defendant made no formal motion to continue nor did he provide any supporting affidavits or other evidence.

The case proceeded to trial on 21 October 1986 without a jury and in defendant's absence. The evidence tended to show that plaintiff, a glass contractor, and defendant, a developer and builder, had, on or around 22 August 1985, contracted for plaintiff to supply and install windows and doors and other glasswork to defendant's residence. The contract also required defendant to make ready all frames, walls, etc. to expedite the installation. The original contract price was $42,648.00. The parties agreed to an additional price of $13.00/sq. ft. for the installation of frames and glass to a swimming pool area. The parties further executed a supplemental agreement providing for the supply of acrylic materials in the amount of $800.00.

Plaintiff's employees timely began work on defendant's residence but discovered that many of the walls, frames and ceilings were "out of plumb" and uneven. The unevenness impaired the installation and delayed plaintiff's work. Defendant refused to correct the frames and walls as required by the contract stating that this was plaintiff's responsibility. Plaintiff's employees eventually straightened the walls and frames and continued work. Subsequently, the parties modified the original contract both in writing and orally to provide for additional work by plaintiff and increased cost to defendant.

On or around 3 October 1986, with approximately 25% of the work under the contract completed, plaintiff requested payment of 25% of the contract price. Defendant refused saying he would have to check with what were apparently his business "people in Miami." Defendant told plaintiff to continue work nonetheless. Two weeks later, with 40% of the work completed, plaintiff again requested payment but defendant refused saying the project was not progressing quickly enough. Defendant also told plaintiff's employee that the original contract would have to be redrafted to satisfy the "people in Miami." Plaintiff agreed to the new contract relying on defendant's promises of future payment and continued to provide labor and materials. Defendant then requested still more work not under contract. Plaintiff's employee refused the

Jennings Glass Co. v. Brummer

request. Defendant responded saying he would not pay any amounts owed if the work was not done. A few days prior to completion of the work, defendant, for the first time, informed plaintiff that the work was unacceptable. When asked, defendant refused to identify the defective work of which he complained. Plaintiff immediately sent out Mr. Haywood Plott, a construction expert, to inspect the work. Mr. Plott reported that the work met or exceeded the standards for workmanlike construction in the area.

Plaintiff filed a claim of lien on 14 November 1985 which specified the defendant's property by reference to the book and page number in the Buncombe County Registry as well as the beginning and ending dates for the supply of materials.

On or around 15 November 1985 plaintiff made one last request for payment. Defendant refused saying that if suit were brought by plaintiff, defendant and his attorney would delay the litigation process up through an appeal, if any. Defendant again told plaintiff to continue work.

In its judgment the trial court found that pursuant to the contract between the parties, defendant owed plaintiff $70,048.75, less $19,600.00 that defendant had paid by the time of trial. In addition, the trial court found:

28. That the Defendant routinely engaged in a pattern of decitful [sic] and misleading practices whereby he secured the services and materials of various businesses and contractors to his benefit, including the Plaintiff, without payment of just compensation by the Defendant and without the intent to pay such just compensation.

29. That the actions and representations of the Defendant as aforesaid had the capacity to deceive, and were intended to deceive and thereby unfairly obtain credit, which credit was provided by the Plaintiff in the form of beginning and continuing the installation of glass and framing materials even after payment therefore was not forthcoming. That Defendant's consistent avoidance of payment to the Plaintiff was totally unjustified.

30. That the Defendant's actions in unjustifiably delaying and refusing to make payment to the Plaintiff for an extend-

ed period of time was intended by the Defendant and had the effect of, obtaining the use and benefit of Plaintiff's assets without paying just compensation.

31. That the actions of the Defendant as aforesaid has directly affected the Plaintiff's ability to carry on his business, in that the Defendant's unjustified refusal to pay for the Plaintiff's services and materials has resulted in a cash flow problem in the Plaintiff's business, making it difficult and in some cases impossible for the Plaintiff to accept certain jobs, to make its payroll, and to pay payroll taxes, and to obtain necessary supplies and materials in its business.

Based upon these and other findings of fact, the trial court concluded:

4. That the actions of the Defendant in repeatedly and intentionally making misrepresentations of his intent, and bad faith, as illustrated in the Findings of Fact, which misrepresentations were reasonably relied upon by the Plaintiff to its detriment, constitute fraud and give rise to an award of punitive damages against the Defendant and in favor of the Plaintiff.

Defendant filed notice of appeal on 30 October 1986 and later moved to settle the Record on Appeal. On 13 December 1986 defendant served his proposed Record on Appeal on plaintiff. Plaintiff timely filed an alternative Record on Appeal. Defendant moved for an extension of time to file a new Record on Appeal and for inclusion of certain matters in the Record. Over plaintiff's objections, the trial judge allowed some and excluded other items requested by defendant.

Defendant appeals the judgment awarding plaintiff compensatory and punitive damages. Plaintiff appeals the trial court's ruling that defendant's conduct did not constitute a violation of N.C. Gen. Stat. § 75-1.1 (1985) and the trial court's decision to allow the inclusion of items requested by defendant in the Record on Appeal.

*Jackson, Jackson & Burrell, P.A., by Frank B. Jackson and Charles Russell Burrell, for plaintiff-appellee/cross-appellant.*

*Adams, Hendon, Carson, Crow & Saenger, P.A., by George W. Saenger, for defendant-appellant/cross-appellee.*

WELLS, Judge.

### Defendant's Appeal

Defendant's first two assignments of error attack the trial court's denial of defendant's motions to continue dated 8 October 1986 and 21 October 1986, respectively. Rulings on motions to continue are addressed to the sound discretion of the trial court. *Shankle v. Shankle,* 289 N.C. 473, 223 S.E. 2d 380 (1976); *State v. Williams,* 51 N.C. App. 613, 277 S.E. 2d 546 (1981). The trial court's ruling is not reviewable absent a manifest abuse of discretion. *Williams, supra.* N.C. Gen. Stat. § 1A-1, Rule 40(b) (1983) requires a showing of good cause on motion for a continuance. *Shankle, supra.* Whether the reasons asserted by movant sufficiently constitute good cause is left to the discretion of the trial court. *Id.* That constituting good cause must necessarily be determined from the facts of each case. *Id.*

[1] In the case at bar, defendant asserts that the 10 October 1986 deposition of his own witnesses would delay his trial preparation thereby causing him prejudice. This assertion is without merit. Defendant should not have been prejudiced by surprise testimony by his own witnesses. On this ruling we defer to the trial court's judgment and overrule the assignment of error.

Defendant contends that his 21 October 1986 motion to continue was improperly denied. Again we disagree. Although defendant claimed serious illness, the trial court noted in response to defendant's absence at the hearing that defendant had only a little more than a week earlier appeared before the court which served to undermine the credibility of his claim. Moreover, defendant's failure to make a formal motion lent support to the trial court's ruling. Again, we defer to the trial court's discretion and overrule this assignment of error.

[2] Defendant next assigns as error the trial court's grant of defendant's motion to consolidate when defendant was absent from the motion hearing. On its face, this states an absurd propo-

sition. Defendant cannot now be heard to complain of the success of his own motion even if granted in his absence. Defendant contends further that he was prejudiced by the consolidation of his case with that of plaintiff's because the 22 October 1986 judgment effectively dismissed his action against plaintiff. This argument is likewise untenable. Whether the trial court should have treated his case as a compulsory counterclaim or a separate action would have no bearing on the dismissal of the defendant's case. This assignment is overruled.

Defendant's fourth assignment of error assails the trial court's admission of nine additional witnesses listed in the 8 October 1986 supplemental answer, asserting a violation of the 19 August 1986 order. However, defendant at no time prior to or during the trial objected to the testimony of these witnesses. Failure to object to the admission of evidence constitutes a waiver of the objection precluding an appeal of the matter. *Spencer v. Spencer*, 70 N.C. App. 159, 319 S.E. 2d 636 (1984); N.C. Gen. Stat. § 8C, Rule 103(d) (1986); 1 Brandis, *North Carolina Evidence*, sec. 27 (2d Rev. Ed. 1982).

Defendant next contends that the evidence adduced at trial supports neither the findings of fact nor conclusions of law rendering the judgment improper. We believe otherwise.

N.C. Gen. Stat. § 1A-1, Rule 52 of the N.C. Rules of Civil Procedure requires a trial judge, sitting without a jury, to make specific findings of fact which support the conclusions of law, which, in turn, support the judgment. *See City of Statesville v. Roth*, 77 N.C. App. 803, 336 S.E. 2d 142 (1985) and cases cited and relied upon therein. On appeal, the trial court's findings are conclusive if they are supported by competent evidence even where there exists some evidence to the contrary. *Id.* Although we have before us a narrative of the trial proceedings in lieu of a transcript (submitted by the consent of both parties), we conclude that the evidence and testimony contained therein overwhelmingly support the trial court's findings in all respects. The only error we note is one of mathematics regarding the amount of the judgment award. The trial court made correct findings regarding the amounts owed plaintiff but failed to carry this through to the judgment. The judgment should be amended to reflect an award of $50,448.75—($70,048.75 less $19,600.00).

[3] By six assignments of error, defendant complains that the award is not based on the contract on which this suit is brought. Claiming that an express contract precludes recovery in *quantum meruit,* reasonable value of services rendered, defendant argues that the plaintiff is limited to a recovery of the contract price only. *Keith v. Day,* 81 N.C. App. 185, 343 S.E. 2d 562 (1986); *Elec-Trol, Inc. v. Contractors, Inc.,* 54 N.C. App. 626, 284 S.E. 2d 119 (1981), *rev. denied,* 305 N.C. 298, 290 S.E. 2d 701 (1982). We disagree. In the present case, plaintiff and defendant had agreed, by subsequent oral and some written modifications, upon additional work for an increased cost. The court found that plaintiff had in fact done the work requested by defendant (work not contemplated in the original contract) which entitled plaintiff to the value of his written contract plus the value of the additional services provided under the modifications. *See Industrial & Textile Piping v. Industrial Rigging,* 69 N.C. App. 511, 317 S.E. 2d 47, *disc. rev. denied,* 312 N.C. 83, 321 S.E. 2d 895 (1984). These assignments are overruled.

[4] Defendant likewise argues that the punitive damages award was not supported by the evidence. In an action for breach of contract where there exists tortious conduct accompanied by aggravating circumstances, punitive damages may be awarded. *Newton v. Insurance Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976). Punitive damages are also available where fraud is found. *Stone v. Martin,* 85 N.C. App. 410, 355 S.E. 2d 255 (1987). Inasmuch as the trial court, based upon numerous findings of fact, concluded that defendant had defrauded plaintiff, all supported by substantial evidence, an award of punitive damages was appropriate.

[5] Defendant correctly points out that the judgment directing the sale of defendant's property pursuant to N.C. Gen. Stat. § 44A-13 (1984) is improper. To enforce a materialman's lien, the judgment must contain a general description of the property and state the effective date of the lien. *Miller v. Lemon Tree Inn,* 32 N.C. App. 524, 233 S.E. 2d 69 (1977). Moreover, the amount recoverable under the lien is limited to the amount claimed in the initial claim, or as here $42,648.00. N.C. Gen. Stat. § 44-13(b). However, because plaintiff pursued this recovery by filing both a claim of lien and this present action, and has at all times maintained its request for a lien in its complaint and appeal, the judgment relating back and incorporating the complaint and claim of

lien includes all the information required under *Miller, supra,* except the effective date of the lien. Plaintiff should not be barred from the benefits of a remedy by the trial court's failure to include in its judgment the beginning and ending dates of the work.

The trial court is instructed on remand to amend the judgment to reflect the effective date of the lien. The judgment must also reflect the limit of $42,648.00, the amount stated in the claim of lien.

### Plaintiff's Appeal

[6] Plaintiff cites as error the trial court's refusal to find that the facts supported a claim under N.C. Gen. Stat. § 75-1.1 (1985). We agree with plaintiff and reverse and remand for an amendment to the judgment.

N.C. Gen. Stat. § 75-1.1 declares unlawful the ". . . unfair or deceptive acts or practices in or affecting commerce." The facts which give rise to a Chapter 75 claim necessarily depend on the circumstances of each case and the impact the act(s) or practice(s) has on the marketplace. *Marshall v. Miller,* 302 N.C. 539, 276 S.E. 2d 397 (1981). The statute protects not only individual consumers, but businesses as well. *Concrete Service Corp. v. Investors Group, Inc.,* 79 N.C. App. 678, 340 S.E. 2d 755, *cert. denied,* 317 N.C. 333, 346 S.E. 2d 137 (1986). Proof of fraud necessarily constitutes a violation of G.S. § 75-1.1. Whether the facts found give rise to a Chapter 75 claim is a matter of law to be determined by the trial court, fully reviewable on appeal. *Hardy v. Toler,* 288 N.C. 303, 218 S.E. 2d 342 (1975). Once a Chapter 75 violation is shown, trebling of damages is automatic. *Marshall v. Miller, supra; Hardy v. Toler, supra.*

Our Supreme Court has determined that the concept of unfairness, as contemplated by Chapter 75 ". . . is broader than and includes the concept of 'deception.' [1974] 2 Trade Reg. Rep. (CCH) § 7521. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." (Cites omitted.) *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 266 S.E. 2d 610 (1980).

In the present case, the trier of fact specifically found that defendant "routinely engaged in a pattern of deceitful and mis-

leading practices whereby he secured the services and materials of various businesses and contractors to his benefit, including the plaintiff, without payment of just compensation by the defendant and without the intent to pay just compensation." In effect, the trial court found that defendant engaged in a variety of activities which, in this case, leads unerringly to a Chapter 75 claim. We therefore hold that plaintiff is entitled to have its actual damages trebled and to an appropriate award of attorney's fees. As we noted in *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 344 S.E. 2d 297, *rev. denied*, 318 N.C. 283, 347 S.E. 2d 464 (1986), a plaintiff in a case such as this is not entitled to recover both punitive damages and treble damages under G.S. § 75-16. We treat plaintiff's appeal as an election to recover treble damages under a Chapter 75 claim. On remand, the judgment shall be amended to correctly reflect plaintiff's actual damages of $50,448.75. The award of punitive damages shall be stricken, and plaintiff's actual damages shall be trebled. An appropriate award of attorney's fees shall be made.

Because we have decided plaintiff's appeal in its favor, we need not reach plaintiff's arguments regarding the composition of the Record on Appeal.

Affirmed in part, vacated in part, and remanded with instructions.

Judges JOHNSON and COZORT concur.